UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ANGELIQUE PAIGE,

        Plaintiff,

    v.

NEW HAVEN UNIFIED SCHOOL
DISTRICT, et al.,

        Defendants.
_____/

No. C 09-0687 PJH

**ORDER GRANTING SUMMARY
JUDGMENT IN PART AND DENYING
SUMMARY JUDGMENT IN PART**

Defendants' motions for summary judgment came on for hearing on November 10, 2010 before this court. Plaintiff, Angelique Paige ("plaintiff"), appeared through her counsel, Arnold Woods and John Russel. Defendants the New Haven Unified School District (the "District"), and the City of Union City ("Union City"), appeared through their respective counsel, Joseph A. Whitecavage and Trish Hynes and Rachel Wagner. Having read all the papers submitted and carefully considered the relevant legal authority, the court hereby GRANTS defendants' motions for summary judgment in part and DENIES the motions in part, for the reasons stated at the hearing, and as follows.

**BACKGROUND**

This action arises out of an incident that occurred on December 21, 2007. On that date, Vernon Eddins ("Eddins"), a fourteen year old African American freshman at Logan High School ("Logan"), was shot and killed on the premises of Barnard-White Middle School ("Barnard"). Both schools are located in Union City, and are part of the New Haven Unified School District. Plaintiff is Eddins' mother. Both she and her son resided in Union City at the time of Eddins' death. Plaintiff brings suit against the District and Union City, as

United States District Court
For the Northern District of California

1  well as Vernon Eddins, Sr. ("Eddins Sr."), as a result of Eddins' death.[1]

2  A.    Background Allegations

3      Plaintiff alleges that Eddins was lawfully on Barnard's premises when he was shot

4  and killed.  See Complaint at p. 5.  Plaintiff alleges that prior to the shooting, defendants

5  were aware of ongoing, racially motivated violence and threats of violence – including

6  shootings – that were directed against Eddins specifically and other African-American

7  students.  Id.  Plaintiff further alleges that defendants had been specifically informed that

8  acts of violence against African American students would take place at or near Barnard on

9  December 21.  Plaintiff states that defendants had a duty to protect persons on the school

10 premises from such acts of violence.  Id.  Notwithstanding this duty, however, defendants

11 allegedly failed to take reasonable and adequate steps to secure and safeguard the school

12 premises, or to protect the safety of persons, including Eddins.  Id.

13     Plaintiff also alleges that Union City's Police Department maintained discriminatory

14 policies and/or customs which exhibited deliberate indifference to the safety and

15 constitutional rights of decedent and other African American residents.  Complaint, at p. 7.

16 These policies or customs include: inadequately and improperly responding to complaints

17 of racially motivated violence and threats directed against Eddins and other African

18 Americans; failing to discourage and sanction such violence and threats; and suggesting

19 that African Americans, including Eddins and his family, move to another city in response to

20 racially motivated violence and threats, instead of properly investigating and prosecuting

21 such activity.  Id.

22     Plaintiff filed this action, via form complaint, on December 22, 2008, in Alameda

23 County Superior Court.  Plaintiff alleges four causes of action: (1) general negligence; (2)

24 intentional tort; (3) premises liability; and (4) violation of 42 U.S.C. § 1983.  Complaint, at p.

25 3.  The more detailed "Cause of Action" pages attached to plaintiff's form complaint,

26 ───────────────

27      [1]    While Vernon Eddins, Sr. has technically been named as a defendant in the
action, the court notes that defendant has never entered an appearance in this action, nor
28 does he appear to have ever filed a joinder in support of the action's removal to federal court.

United States District Court

For the Northern District of California

however, appear to further clarify that plaintiff's claims against each individual defendant

are as follows: plaintiff asserts general negligence and premises liability claims against the

District; and asserts general negligence and section 1983 claims against Union City.

Contrary to the standard boxes checked on the form complaint, the more detailed

explanation of plaintiff's claims does not expressly plead any "intentional tort" claim against

any defendant.  The court's interpretation was confirmed by plaintiff's counsel at the

hearing.

Plaintiff's action was subsequently removed to federal court.

B.     Factual Record

Friday, December 21, 2007, was the last day of school before the winter break.  See

Defendant's Supporting Evidence ("DSE"), Ex. E, Tab 3 at 36:1-4.  Vernon Eddins, who

was a student at Logan high school, left Logan early that afternoon (i.e., prior to school

being dismissed), along with 6 or 7 of this friends.  Id., Tab 6 at 16-18.  Eddins and his

friends walked to Eddins' house, and "hung out" for about 40 minutes or an hour.  Id., Ex.

E, Tab 6 at 19-21; Tab 8 at 19:14-25.  The group then went to Barnard middle school, in

order to pick up Jonathan J., the younger brother of one of Eddin's friends – Robbie J.  Id.,

Ex. E, Tab 6 at 30:18-24.  Robbie J. has stated that he was concerned for his younger

brother, because someone had threatened Jonathan.  See DSE, Ex. E, Tab 6 at 23-27.

When Eddins and his friends arrived at Barnard – a closed campus – school was still

in session.  Between 2:00 and 2:30 p.m. – still prior to the dismissal of classes for the day –

Karen Saucedo, Barnard's principal, received reports that a group of high school juveniles

were on campus.  DSE, Ex. E, Tab 3 at 32-33, 48.  Principal Saucedo requested that the

police be called regarding the group of high school juveniles trespassing on campus.

Officer Robert Young of the Union City Policy Department proceeded to the school.  In

addition to the phone call to the police, Officer Young had also been flagged down by a

pedestrian at the intersection of Whipple Road and A streets – 2 blocks from Barnard – and

the pedestrian informed Officer Young that there was a group of African American juveniles

United States District Court

For the Northern District of California

1   near Barnard along Whipple Road, possibly carrying sticks and rocks.  DSE, Ex. C ¶¶ 4-5.

2   When Officer Young arrived at Barnard along Whipple Road (which borders the school), he

3   spotted several African-American youths coming from the direction of school campus,

4   including Eddins.  Id., Ex. A; Ex. E, Tab 6 at 36-38; Tab 8 at 24-25.

5       Officer Young – soon joined by Officer Trent Collins – questioned Eddins and his

6   friends, but did not observe anything out of the ordinary.  They saw no sticks or weapons in

7   the immediate area.  None of the boys asked for assistance of any kind.  The officers

8   informed the boys that they could not go on to the Barnard campus, and that they needed

9   to behave, but otherwise were free to go.  DSE, Ex. A, ¶ 10; Ex. B, ¶ 8.  The officers

10  observed the group of boys walking away from Barnard, and then the officers left.

11      Principal Saucedo also observed the group of boys walking away after the police

12  interaction.  She stayed on Whipple Road to monitor the dismissal of students from school,

13  until approximately 3:00 p.m.  When she left to return to the school's front office, she did

14  not see any middle school students, high school students, or pedestrians left on Whipple

15  Road.  See DSE, Ex. E, Tab 3 at 71-72, 75-76.

16      After the encounter with the police, Eddins and his friends picked up Robbie J's

17  brother Jonathan from Barnard, and then walked Jonathan home.  DSE, Ex. E, Tab 6 at

18  41-42.  Jonathan lives approximately five minutes away from Barnard.  After dropping

19  Jonathan off at home, Eddins and his friends returned to Whipple Road, to a bus stop

20  across the street from Barnard.  Id., Ex. E, Tab 6 at 44-45; Tab 8 at 29-30.

21      After the boys had returned to Whipple Road, a Barnard employee called the police

22  – at approximately 3:08 p.m. – and reported that a group of high school juveniles were

23  loitering in front of the school and seemed to be the same group that had been there

24  earlier.  DSE, Ex. C, ¶¶ 6-7; Whitecavage Decl., Ex. E, p. 2.  At 3:17 p.m., Officer Young

25  was again dispatched to return to the school in response to the call.  Id., at ¶ 7; Ex. A, ¶ 12.

26      Meanwhile, some of the boys at the bus stop saw a black Suburban pass slowly by

27  on Whipple Road and park at the 7-11 parking lot.  Id., Ex. E, Tab 6 at 53-55.  Several

28

United States District Court
For the Northern District of California

1   Latino males walked on foot in their direction.  The boys decided to cross the street towards

2   the middle school (for safety).  In Barnard's driveway, the boys stopped, and some of them

3   considered fighting the Latino males.  Id., Ex. E, Tab 6 at 115:8-20; Tab 8 at 34-35.

4       At 3:21 p.m., a third call was made by Sandra Haro of Barnard to the Union City

5   police – on the non-emergency line – to report that a group of students was outside and

6   possibly fighting.  DSE, Ex. E, Tab 4 at 14; Ex. C, ¶ 9.  Seconds later, while still on the

7   phone with police, Haro reported that gunshots had been fired.  Id., Ex. C, ¶ 9; Ex. E, Tab 4

8   at 12:18; Tab 3 at 90.  The Latino males had shot into the group, killing Eddins.  The

9   remaining boys ran into the school and were in the front office when the police arrived.

10  Officer Young – joined by Officer Collins – recognized some of the boys in the front office

11  as being the same boys they had interacted with earlier that afternoon, and they recognized

12  Eddins as having also been part of that group.  DSE, Ex. A, ¶ 15; Ex. B, ¶ 10.

13      Prior to the call regarding the shooting itself at approximately 3:21, the Union City

14  police had not received any calls regarding a threat of violence against students at Barnard.

15  DSE, Ex. C at ¶¶ 2-9.

16      During the approximately two years prior to the shooting, however, Eddins' mother

17  had contacted the police department 4 to 5 times regarding chases or assaults on Eddins

18  by unnamed Latino males.  On each instance, the police came out and spoke with Eddins

19  and his mother the same day she contacted police.  DSE, Ex. E, Tab 10 at 56:11-17.

20                                      * * *

21      Defendants Union City and the District both now move for summary judgment.

22                              **DISCUSSION**

23  A.    Legal Standard

24      Summary judgment is appropriate when there is no genuine issue as to material

25  facts and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56.

26  Material facts are those that might affect the outcome of the case.  Anderson v. Liberty

27  Lobby, Inc., 477 U.S. 242, 248 (1986).  A dispute as to a material fact is "genuine" if there

28

United States District Court

For the Northern District of California

1   is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party.  Id.

2           A party seeking summary judgment bears the initial burden of informing the court of

3   the basis for its motion, and of identifying those portions of the pleadings and discovery

4   responses that demonstrate the absence of a genuine issue of material fact.  Celotex Corp.

5   v. Catrett, 477 U.S. 317, 323 (1986).  Where the moving party will have the burden of proof

6   at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other

7   than for the moving party.  Southern Cal. Gas. Co. v. City of Santa Ana, 336 F.3d 885, 888

8   (9th Cir. 2003).

9           On an issue where the nonmoving party will bear the burden of proof at trial, the

10  moving party can prevail merely by pointing out to the district court that there is an absence

11  of evidence to support the nonmoving party's case.  Celotex, 477 U.S. at 324-25.  If the

12  moving party meets its initial burden, the opposing party must then set forth specific facts

13  showing that there is some genuine issue for trial in order to defeat the motion.  See Fed.

14  R. Civ. P. 56(e); Anderson, 477 U.S. at 250.

15  B.      The District's Motion for Summary Judgment

16          Plaintiff's complaint alleges two causes of action against the District:  general

17  negligence; and premises liability.  The District moves for summary judgment as to both

18  claims, on grounds that plaintiff's claims fail as a matter of law and evidence.

19          1.      General Negligence

20          Plaintiff's negligence claim against the District alleges that the District had "a duty to

21  protect" Eddins and other African American students from the act of violence that took

22  place at or near Barnard, and that the District "failed to take reasonable, adequate,

23  necessary, and proper measures to secure and safeguard its premises and to protect the

24  safety" of Eddins and others.  Complaint, at p. 5.  In the opposition papers and at the

25  hearing on the instant motion, plaintiff's counsel further clarified and narrowed the particular

26  duty breached in this case – identifying it as the District's duty to adequately supervise its

27  students, which plaintiff characterizes as including the duty to prevent students from leaving

28

6

1    school grounds.

2        In response, the District generally contends that plaintiff's general negligence claim

3    against it fails, because no common law liability for negligence on the part of a public entity

4    may lie unless expressly provided by statute.  The District then notes that plaintiff failed to

5    expressly plead a statutory basis for liability against defendant, and furthermore, to the

6    extent plaintiff has a newly minted claim for breach of the duty to supervise, plaintiff failed

7    to include it as part of the administrative claim that was submitted prior to suit in compliance

8    with Cal. Gov't Code § 945.4.  Accordingly, any negligence claim must fail.

9        As a preliminary matter, the court finds unpersuasive defendant's argument that

10   summary judgment is warranted because plaintiff has failed to identify any statutory basis

11   for liability.  In her opposition papers, plaintiff has specifically invoked several statutory

12   bases for imposition of liability on the District: Cal. Educ. Code § 44807; California

13   Constitution, Art. I, § 28, subdivision (c); and 5 CCR § 303.  The court finds these

14   invocations sufficient to identify a statutory basis for liability.

15       To the extent, moreover, that defendant asserts that plaintiff's 'failure to supervise'

16   claim is barred, because plaintiff failed to include it as part of her administrative claim, this

17   argument, too, is unpersuasive.  While defendant is correct that plaintiff's claim was not

18   expressly disclosed in the complaint, or in plaintiff's interrogatories, plaintiff's failure to

19   supervise claim is nonetheless based on facts that are a part of the evidentiary record

20   established in this case through discovery.  Plaintiff, for example, has cited to the

21   deposition testimony of Tommie Lindsey, the teacher whom Eddins informed on December

22   21 that there was going to be trouble at Barnard later that day.  See Woods Decl., Ex. 32 at

23   51, 96, 21-23, 97.  Lindsey was specifically informed that Eddins' friends' younger brothers

24   had been threatened by Latino kids, and that Eddins was going to leave Logan and go over

25   to Barnard to protect the boys and escort them home.  Id. at 98.  Lindsey in turn

26   purportedly informed Logan's principal Montoya, who testified in deposition that he

27   telephoned principal Saucedo at Barnard.  In addition, plaintiff cites to the deposition of

28

United States District Court

For the Northern District of California

United States District Court

For the Northern District of California

1   David Pava, who testified that it is District policy that school administrators should intervene

2   and prevent students from cutting class, by calling their parents, whenever they learn of a

3   student's intention to leave school early.  Woods Decl., Ex. 34 at 8, 35-36.  These facts

4   have been a part of the record throughout discovery, and available to the District.

5          And while the District makes much of the absence of the failure to supervise claim

6   on plaintiff's administrative claim submitted to the District, the administrative claim itself

7   does mention that the District had "awareness of the violence in communications with

8   parents of students within the district, " and despite this awareness, failed to take steps to

9   "secure and safeguard its premises and to protect the safety of students."  See Second

10  Whitecavage Decl., Ex. A.  The duty to supervise students arguably forms part and parcel

11  of the District's duty to secure its premises and safeguard its students, and as such, the

12  administrative claim provided fair notice of plaintiff's failure to supervise theory.  Finally, and

13  more fundamentally, the factual basis for both a failure to supervise and a failure to protect

14  claim are the same here: they are based on the same facts regarding the threats of racially

15  motivated violence aimed at Eddins and other African American students.

16         Turning to the merits of defendant's summary judgment arguments, plaintiff has

17  correctly pointed out that California law has long imposed – by virtue of statute – on school

18  authorities a duty to "supervise at all times the conduct of the children on the school

19  grounds and to enforce those rules and regulations necessary to their protection." See also

20  Taylor v. Oakland Scavenger Co., 17 Cal.2d 594, 600 (1941).  Either a total lack of

21  supervision or ineffective supervision may constitute a lack of ordinary care on the part of

22  those responsible for student supervision.  And, as necessary for a viable negligence claim

23  here, such duties are codified by statute.  See, e.g., Cal. Ed. Code, §§ 44807, 13557; see

24  also Dailey v. L.A. Unified Sch. Dist., 2 Cal.3d 741, 747 (1970)("Under section 815.2,

25  subdivision (a) of the Government Code, a school district is vicariously liable for injuries

26  proximately caused by such negligence").

27         The District contends that plaintiff's claim nonetheless fails because, even assuming

28

8

United States District Court

For the Northern District of California

1  the District's duty to supervise, it was not reasonably foreseeable that Eddins would be shot

2  to death on or near the Barnard campus after school had been dismissed for winter break,

3  by virtue of criminal third party conduct.  The police, for example, initially instructed Eddins

4  and his friends to leave Barnard's campus, and believed that Eddins and his friends had

5  done so, before the shooting occurred.

6        Although this argument is at first blush appealing, and although the court has doubts

7  as to whether Eddins' death was foreseeable as a result of Logan high school's failure to

8  supervise Eddins and his friends, the court nonetheless finds that plaintiff has introduced

9  material facts – i.e., the fact that Eddins specifically reported the precise threat at issue to

10  his teachers at Logan, including that Eddins intended to head over to Barnard that day; that

11  those teachers reached out to Barnard's principal and teachers; and that those teachers

12  were themselves concerned that something would happen – that create a triable issue, at a

13  minimum, as to whether Eddins' death was, in fact, foreseeable.  More importantly,

14  although defendant argues as a matter of law that the District's negligent on-campus

15  supervision cannot be the proximate cause of an off-campus injury, it must be noted that

16  proximate cause is generally a question of fact for the jury.  See Hoyem v. Manhattan

17  Beach City Sch. Dist., 22 Cal.3d 508, 520 (1978).

18        Thus, in view of the foregoing, the issues of foreseeability and proximate cause must

19  be left for the jury to decide, and the District's motion for summary judgment as to plaintiff's

20  negligence claim against it is DENIED on this basis.

21        2.    Premises Liability

22        Plaintiff's premises liability claim invokes Cal. Gov't Code § 830 and seeks to impose

23  liability on the District based upon the dangerous condition of the District's property – which

24  plaintiff defined in both her opposition brief and at the hearing as the Logan and Barnard

25  campuses.  The District, however, asserts that two separate grounds justify entry of

26  summary judgment on plaintiff's claim:  first, that plaintiff cannot establish that any property

27  was in a dangerous condition, since third party criminal activity is not a condition of property

28

United States District Court

For the Northern District of California

1   itself; and second, that plaintiff cannot establish that Eddins' injury was proximately caused

2   by any alleged dangerous condition of property.

3       Government Code section 830 defines "dangerous condition" as "a condition of

4   property that creates a substantial (as distinguished from a minor, trivial or insignificant) risk

5   of injury when such property or adjacent property is used with due care in a manner in

6   which it is reasonably foreseeable that it will be used."  As defendant correctly notes and

7   plaintiff appears to concede, harmful third party conduct, standing by itself, has not

8   generally been recognized as a basis for imposing liability for a public entity's dangerous

9   condition of property.  Rather, a plaintiff must demonstrate some combination that includes

10  both some characteristic of public property that contributed to the plaintiff's injury, *and*

11  negligent or criminal conduct of others on or about the property.  See Hayes v. State of

12  Cal., 11 Cal. 3d 469, 472 (1974).

13      Plaintiff asserts that this combination has been satisfied.  With respect to the

14  "condition" of public property at issue, plaintiff points to "the sheer number of unmonitored

15  access points at Logan high school" and argues that this condition, when combined with

16  "the climate of gang-related racial violence at Logan and throughout Union City,"

17  proximately led to Eddins' death.  See Opp. Br. at 19:8-13.  Alternatively, plaintiff asserts

18  that a dangerous condition may be found in the District's "allowing Decoto gang members

19  to essentially claim ownership of portions of the Barnard and Logan campuses," which

20  when combined with the gang's foreseeable criminal behavior, also proximately led to

21  Eddins' death.

22      The court can find no support for either of plaintiff's arguments.  Plaintiff's first

23  argument – that it is the number of unmonitored access points at Logan that created the

24  condition that, when combined with foreseeable gang activity, led to Eddins' death – is one

25  that finds no direct support under the law.  Generally, the case law that deals with the

26  question of a public entity's property, its dangerous condition, and the third party conduct

27  that allowed the dangerous condition to place a plaintiff at risk of injury, indicates that

28

United States District Court
For the Northern District of California

where liability is found, the third party conduct is always closely tied to the characteristic of the public property itself.  In other words, there must be a sufficient nexus between the condition of the property, and the third party's negligent or criminal activity.  <u>See, e.g.,</u> <u>Swaner v. City of Santa Monica</u>, 150 Cal. App. 3d 789 (1984)(plaintiffs lying on public beach near a parking lot, and struck by a vehicle driving on the beach; plaintiffs' claim that beach was dangerous because there were no barriers between the parking lot and the beach were sufficient to state a premises liability claim); <u>Peterson v. S.F. Cmty. Coll. Dist</u>., 36 Cal.3d 799, 812-813 (1984)(plaintiff assaulted on public college campus in broad daylight alleged that parking lot where she was assaulted was dangerous because of "thick and untrimmed foliage and trees;" plaintiff's claim sufficient to state premises liability claim).

Particularly instructive is <u>Rodriguez v. Inglewood Unified Sch. Dist</u>., 186 Cal. App. 3d 707 (1986).  In <u>Rodriguez</u>, a high school student was stabbed by a nonstudent.  The victim alleged the high school was dangerous within the meaning of section 830 because the school had a long history of violence and school officials did not take adequate security measures.  The court rejected, however, the student's contention that the district's failure to provide adequate security created a dangerous condition:  "In Rodriguez's complaint, we have the bare allegations that he was stabbed by a nonstudent while he was on the campus.  No physical defects or conditions of the campus are alleged which would increase the risk of crime.  The allegation that other such acts occurred on the campus prior to his assault adds notice but does not bring his factual situation within the legal parameters of a dangerous condition to state a cause of action.  Further, it is difficult to imagine how the few paragraphs of charging allegations could be strengthened with adequate facts to state a cause of action."

<u>Rodriguez</u> and the foregoing cases can be reconciled with the observation that in the foregoing cases, there was some condition tied to the property itself that was directly tied to plaintiff's injury, while in <u>Rodriguez</u>, there was an insufficient link between the third party criminal activity that resulted in the plaintiff's injury, and the existence of a dangerous

1    condition tied to the property.

2        Ultimately, so here.  While plaintiff attempts to establish a dangerous condition in the

3    form of "unmonitored access points" at Logan, there is still no link between these access

4    points, and any injury, that is tied to the *property itself*.  Rather, it is undisputed that Eddins'

5    injury occurred at Barnard – a different property altogether.  Plaintiff's argument thus invites

6    the court to expand the manner in which premises liability has thus far been applied.  The

7    court must decline this invitation, particularly since plaintiff has not come forward with an

8    affirmative case supporting the imposition of premises liability based on the link between a

9    dangerous condition and an injury, which occurred on two separate properties entirely.

10       Plaintiff's alternative contention – that a dangerous condition may be found in the

11   District's "allowing Decoto gang members to essentially claim ownership of portions of the

12   Barnard and Logan campuses," which when combined with the gang's foreseeable criminal

13   behavior, also proximately led to Eddins' death – is simply unsupported by the record.

14   Plaintiff introduces no evidence to support her sweeping conclusion that the District directly

15   "allowed Decoto gang members to claim ownership" of either Barnard or Logan campuses.

16   Even if plaintiff had, plaintiff fails to suggest how such 'ownership' is tied to the condition of

17   the District's property itself, such that the decedent's injury was tied to his reasonably

18   foreseeable use of the property.

19       For all the foregoing reasons, the court hereby GRANTS summary judgment in the

20   District's favor with respect to plaintiff's premises liability claim.

21   C.    The City's Motion for Summary Judgment

22       Plaintiff's complaint also alleges two causes of action against Union City:  general

23   negligence; and violation of 42 U.S.C. § 1983.  Union City moves for summary judgment,

24   on grounds that plaintiff's general negligence claim fails as a matter of law; and that

25   plaintiff's section 1983 claim fails on the merits.

26       1.    General Negligence Claim (against Union City)

27       The City moves for summary judgment as to plaintiff's general negligence claim, on

28

United States District Court

For the Northern District of California

United States District Court
For the Northern District of California

1  grounds that the police department has immunity for any claim that its officers failed to

2  provide police protection.  See Cal. Gov't Code § 845.  Plaintiff concedes as much, stating

3  instead that the City is liable because once its officers undertook to investigate Eddins and

4  his friends outside Barnard in response to the initial call, the officers had a duty to escort

5  Eddins and his friends back to Logan.  Their failure to do so led to Eddins' death, asserts

6  plaintiff.

7  Plaintiff's argument stretches the law beyond the bounds of reason.  Plaintiff

8  correctly notes that, as a general matter, and notwithstanding statutory immunity for a

9  failure to provide police protection, liability may be imposed when a police officer voluntarily

10  assumes a duty to provide a particular level of protection and fails to do so.  See, e.g., Zelig

11  v. County of L.A., 27 Cal. 4th 1112, 1128-29 (2002).  However, closer inspection of those

12  cases that have discussed what it means for a police officer to voluntarily assume a duty to

13  provide protection, reveals that such a duty cannot extend to the facts of this case.

14  Generally, the breach of an officer's voluntarily assumed duty may be an affirmative

15  act which places the person in peril or increases the risk of harm.  In McCorkle v. Los

16  Angeles, 70 Cal.2d 252 (1969), for example, an officer investigating an accident directed

17  the plaintiff to follow him into the middle of the intersection where the plaintiff was hit by

18  another car.  Liability attached in such an instance.  Alternatively, a police officer's

19  negligence may also constitute an omission or failure to act.  In Morgan v. County of Yuba,

20  230 Cal. App. 2d 938 (1964), for example, a deputy sheriff promised to warn a decedent if

21  a prisoner, who had made threats on her life, was released.  The county was held liable

22  when the sheriff failed to warn.

23  By contrast, liability has been precluded for injuries caused by the failure of police

24  personnel to respond to requests for assistance, the failure to investigate properly, or the

25  failure to investigate at all, where the police had not induced reliance on a promise, express

26  or implied, that they would provide protection.  Williams v. State of Cal., 34 Cal.3d 18, 26

27  (1983).

28

United States District Court

For the Northern District of California

1    In sum, where a police officer directs a member of the public in such a fashion that

2    he or she – expressly (Morgan) or impliedly (McCorkle) – induces reliance on a promise of

3    protection, the officer may be held liable in negligence.  However, where there is no

4    induced reliance on any such promise, no liability will attach.

5    This is precisely the case here.  The officers in question duly investigated Eddins

6    and his friends when they first appeared on Barnard's closed campus while school was in

7    session.  The officers testified that they determined no weapons or sticks on the boys, and

8    that the boys were cooperative and compliant.  After being instructed to go home and to

9    stay off Barnard's campus, the officers waited until the boys had departed campus before

10   leaving.  There is no evidence offered by either defendant or plaintiff that the boys notified

11   the police officers of any threat of violence that day, and no evidence that any police officer

12   in any way induced any reliance on a promise of police protection.  As such, there is simply

13   no evidence that could justify a negligence claim against the officers.

14   Indeed, plaintiff's argument is best construed as a claim that the officers did not

15   investigate the situation properly when they first confronted the boys – an argument that

16   precludes liability for negligence pursuant to Williams.

17   Accordingly, the City's motion for summary judgment as to plaintiff's negligence

18   claim is GRANTED.

19        2.    Section 1983 Claim (against Union City)

20   Finally, the City argues that summary judgment is warranted as to plaintiff's section

21   1983 claim against it.

22   The governing standard for section 1983 claims against municipalities is well

23   established.  See Monell v. Dept. of Soc. Serv. of N.Y.C, 436 U.S. 658, 690 (1987).  Monell

24   expressly analyzed the applicability of section 1983 claims to local municipalities, and held

25   that local governments cannot be made liable for the unconstitutional actions of its

26   employees under a respondeat superior theory.  See id., 436 U.S. at 692 (section 1983

27   "language cannot be easily read to impose liability vicariously on governing bodies solely

28

14

United States District Court

For the Northern District of California

1    on the basis of the existence of an employer-employee relationship with a tortfeasor").  It

2    held, however, that when a local government's policy or custom is responsible for inflicting

3    injury at the hands of one of its employees, liability will nonetheless attach.  Id. at 695.  The

4    courts must still carefully police the line between accountability for actions truly intended by

5    a local government, and unfair imposition of respondeat superior liability on local

6    government.  In a case subsequent to Monell, for example, the Supreme Court held that a

7    section 1983 plaintiff must demonstrate that, through "deliberate" conduct, the local

8    government is the "moving force" behind the injury alleged.  See Bd. Of County Comm'rs v.

9    Brown, 520 U.S. 397, 404 (1997).

10         In order for plaintiff's section 1983 claim to succeed here, plaintiff is therefore

11   required to show both a violation of plaintiff's constitutional rights, and that the violation was

12   rooted in a policy or custom directly attributable to Union City (i.e., its police department).

13         As to the first critical question – whether plaintiff can demonstrate a constitutional

14   violation – the court preliminarily notes that it is not altogether clear whether plaintiff is

15   relying on the assertion of a due process violation or an equal protection violation, although

16   plaintiff's opposition brief and her counsel's argument at the hearing implies the latter.  In

17   the event that plaintiff does, in fact, claim a due process violation as a basis for her section

18   1983 claim, however, such a violation is summarily dismissed.  It is well-established that

19   there can be no due process violation based on the duty to provide police protection from

20   private third party violence.  See DeShaney v. Winnebago County Dept. of Soc. Servs., 489

21   U.S. 189, 195 (1989); Johnson v. City of Seattle, 474 F.3d 634 (9th Cir. 2007).  In other

22   words, police inaction cannot be used to invoke a violation of the due process clause of the

23   14th Amendment.  Accordingly, if based solely on a due process claim, plaintiff's section

24   1983 claim fails at the outset.

25         To the extent that plaintiff asserts an equal protection violation as the source for her

26   section 1983 claim, however, a more detailed analysis is warranted.  Plaintiff asserts that

27   Union City's police department failed to provide police protection in equal measure to the

28

United States District Court

For the Northern District of California

1   protection given other racial groups.  As clarified at the hearing, plaintiff specifically

2   contends that Union City's police department failed to provide plaintiff, or other African

3   American students, police protection on the same basis as the police protection afforded

4   Hispanic gang members in Union City.

5          Even assuming – without deciding – that plaintiff can legally state a constitutional

6   violation premised on the police department's failure to provide police protection in equal

7   measure to all racial groups, plaintiff's claim ultimately fails on the merits.

8          For an equal protection claim to be stated, plaintiff must demonstrate that Union City

9   acted with an intent to discriminate on the basis of Eddins' protected class, and that he was

10  treated differently from persons similarly situated.  See, e.g., Lee v. City of L.A., 250 F.3d

11  668, 686 (9th Cir. 2001); see also Barren v. Harrington, 152 F.3d 1193, 1194 (9th

12  Cir.1998).  Here, however, plaintiff has failed to come forward with any material evidence

13  suggesting that any other similarly situated group was treated better than plaintiff or other

14  African-American students.  Indeed, more to the point, plaintiff has utterly failed to

15  introduce evidence suggesting that Hispanic gang members in Union City – i.e., the group

16  that plaintiff specifically alleges received better treatment than plaintiff – were treated better

17  by the police department.  Nor has plaintiff sought to demonstrate by admission of tangible

18  or objective evidence that any policies or customs of the Union City police department had

19  a disproportionate impact on African-American students, as a means of otherwise

20  demonstrating the department's discriminatory treatment of African-American students.

21  Moreover, to the extent that Union City has introduced evidence on this issue, it has

22  submitted statistics that tend to *disprove* that any police policies regarding crime reports or

23  investigations had a disparate impact on African-American youth.  See DSE, Ex. D, ¶¶ 17-

24  18.

25         In sum, plaintiff has failed to come forward with satisfactory evidence that her

26  constitutional rights have been violated.  While this alone dooms her claim pursuant to

27  section 1983, the court furthermore finds that no section 1983 claim can be demonstrated

28

United States District Court

For the Northern District of California

1    for additional reasons, as well.

2         As already noted, in order for plaintiff to state a viable claim against Union City,

3    plaintiff would have to demonstrate more than simply a constitutional violation; plaintiff

4    would also have to demonstrate the existence of a City custom or policy, which custom or

5    policy was the moving force behind plaintiff's injury.  Here, however, plaintiff has failed to

6    come forward with material evidence on both points.

7         First, plaintiff has failed to identify any official policy or custom adhered to by the

8    Union City police department.  Plaintiff attempts instead to rely on an assortment of

9    "informal actions" that purportedly demonstrate the existence of policies, practices, and/or

10   customs that discriminate against African-Americans in Union City.  See Opp. Br. at 13:1-

11   25.  These policies, customs, and practices purportedly include: coercing African-

12   Americans not to file police reports against Hispanic gang members; not following up or

13   investigating when African-Americans file police reports against Hispanic gang members;

14   telling African-Americans they should move out of Union City if they were concerned about

15   being victimized by Hispanic gang members; threatening to arrest African-Americans for

16   filing police reports against Hispanic gang members; treating African-American victims of

17   Hispanic gang activity as suspects; failing to question African-American witnesses to

18   threats or crimes committed by Hispanic gang members; belittling African-American victims

19   of racial slurs by Hispanic gang members; and investigating African-American victims of

20   Hispanic gang members instead of their attackers.  The proof for these policies, customs,

21   and practices is rooted in numerous declarations by African-American students and youth,

22   the vast majority of which were submitted in a related action, Fobbs v. City of Union City, C

23   09-2723 PJH.

24        Putting aside the dubious use of declarations procured from a separate albeit related

25   action to establish proof of an actionable custom or policy in the instant action, the court is

26   unpersuaded that any of the customs, policies, or practices identified in these declarations

27   suffices to satisfy the requirement that plaintiff demonstrate a custom or policy that is the

28

17

**United States District Court**

For the Northern District of California

1    moving force behind plaintiff's injuries.  Each of the customs and policies that plaintiff

2    highlights refer to actions taken by Union City police officers *after* a crime has been

3    reported.  Since none of these customs or policies implicates conduct by police officers that

4    precedes a crime, it stands to reason that none – even if properly established – can

5    therefore constitute the proximate cause of Eddins' death.  In other words, there is no

6    proximate link between the customs or policies themselves, and plaintiff's injury.

7         For similar reasons, plaintiff has also failed to demonstrate that any custom or policy

8    implemented by the Union City police department was the moving force behind Eddins'

9    death and plaintiff's injury – i.e., that the Union City police department acted with

10   "deliberate indifference" as to its known or obvious consequences, causing plaintiff to be

11   deprived of his federal rights.  See Bd. County Com'rs Bryan County v. Brown, 520 U.S.

12   397, 405 (1997).  Indeed, in view of the third party criminal conduct that led to Eddins'

13   shooting, as well as the apparently random nature of the shooting of Eddins specifically, it

14   is difficult to imagine how any after-the-fact policies or customs adhered to by the police

15   department in investigating this and other crimes, could be directly or proximately linked to

16   Eddins' death, much less the cause of his death.  In this regard, the court also finds it

17   significant, as defendant points out, that there is no reported case of Monell liability in the

18   Ninth Circuit where a City policy was found to the be "moving force" behind the commission

19   of a violent crime by unknown parties.  Rather, a lack of causation is more frequently found

20   in section 1983 claims alleging police failures to prevent crime.  See, e.g., Bronner v. S.F.

21   Super. Ct., 2010 WL 2650500 *7 (N.D. Cal. 2010).

22        So here.  In short, for all the foregoing reasons, summary judgment must be

23   GRANTED in Union City's favor as to plaintiff's section 1983 claim.

24   D.    Conclusion

25        For the foregoing reasons, the court hereby GRANTS in part and DENIES in part the

26   District's motion for summary judgment; and GRANTS Union City's motion for summary

27

28

1    judgment.

2

3    **IT IS SO ORDERED.**

4    Dated: December 23, 2010

5                                                     PHYLLIS J. HAMILTON
                                                      United States District Judge
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**United States District Court**
For the Northern District of California